## PERPETUAL BUILDING & LOAN ASS'N v. IRVING TRUST CO. et al.

### No. 4547.·

Circuit Court of Appeals, Third Circuit.

Sept. 16, 1931.

See, also, 44 F.(2d) 218.

Robert T. McCracken, Sigmund H. Steinberg, and Lucien B. Carpenter, all of Philadelphia, Pa., for appellant.

Francis H. Bohlen, Jr., of Philadelphia, Pa., for appellee Moore.

Arthur Littleton, of Philadelphia, Pa., and William O. Robertson, of New York City, for appellee Irving Trust Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In disposing of this case we premise by saying that we do so without in any way qualifying or failing to recognize the controlling effect of the decision of the Supreme Court of Pennsylvania in Klaus v. Majestic, 250 Pa. 194, 95 A. 451, 459. The principal and underlying question in that case was between two mortgagees of an apartment house and lot of the debtor on the one hand, and execution creditors of the said debtor, who had no connection with the said mortgages, on the other hand. Before the said two mortgages were proceeded in or any bill to foreclose therein filed, these independent execution creditors had levied on personal property used in an apartment house. The court held that, as against execution creditors, the two mortgagees, under the statutes of Pennsylvania, had no lien on the personal property, and decreed payment of the execution creditors in full. We have no such case before us.

The second question involved in the cited case was the distribution of the balance of the fund remaining after payment of the execution creditors. It was contended by the first mortgagee that, as against a second mortgage, which was made by its provisions subject to the first, it (the first mortgagee) had priority. This claim of first mortgage priority was allowed; the court saying: "The fund for distribution is the proceeds of personal property, which was included in both mortgages, but on which neither was a lien as against execution creditors. The pledges were good and enforceable between the mortgagor and mortgagees. When the second mortgage was taken, the mortgagee had notice that the property had been pledged by a first mortgage, and expressly agreed that the latter should have priority over the second mortgage. The manifest intention of the mortgagor and the mortgagee in the second mortgage, therefore, was that the first mortgage bonds should first be paid out of the real as well as the personal property included in the mortgage, a part of which was personalty, and its proceeds are now being distributed. The second mortgage bondholders knew that the property had already been pledged to secure an indebtedness of the mortgagor, and accepted the property as a pledge for the debt subject to the prior indebtedness. The court cannot confer on these bondholders rights which they expressly waived. In the language of Williams, J., in Fidelity Ins., Trust & Safe Deposit Co. v. West Penn. & Shenango Connecting Railroad Co., 138 Pa. 494, 505, 21 A. 21, 22, 21 Am. St. Rep. 911: 'The decree of the court below left them in no worse position than that which they vol-

untarily assumed, and they have no right to ask us to place them in a better one.'"

We regard this holding as decisive of the present case. Indeed we have here an even stronger state of facts.

In the present case it appears that on March 17, 1930, the trustee, hereafter called Irving, of a first dated and recorded mortgage, given June 16, 1924, by Spruce Apartments, Inc., hereafter called Spruce, filed a bill against Spruce to foreclose the same. In the said bill the mortgagee, hereafter called Handel, in a second and subsequent mortgage given by Spruce to Handel, was made a party defendant, and the question here involved is the alleged priority of the first mortgagee as to certain personal property of Spruce sold under the foreclosure decree entered in the case. In deciding that question we take as our guide the law as held in the case cited and quoted above. As stated in that case, and as is the case here, "The fund for distribution is the proceeds of personal property, which was included in both mortgages, but on which neither was a lien *as against execution creditors.*" As further stated in that case and as is the case here, "The pledges were good and enforceable between the mortgagor," here Spruce, "and the mortgagee," here Irving, "when the second mortgage was taken, the mortgagee," in our case Handel, "had notice that the property had been pledged by a first mortgage," here Irving's, "and expressly agreed that the latter should have priority over the second mortgage," in our case the agreed on priority of Irving was thus stipulated by Handel, namely, that its mortgage was "under and subject, nevertheless, to the lien and payment of a certain mortgage debt or sum of five hundred and twenty-five thousand dollars ($525,000) reduced to four hundred and seventy-five thousand dollars ($475,000) with interest thereon."

The cited case states "The manifest intention of the mortgagor," here Spruce, "and the mortgagee in the second mortgage," here Handel, "therefore, was that the first mortgage bonds should first be paid out of the real as well as the personal property included in the mortgage, a part of which was personalty, and its proceeds are now being distributed. The second mortgage bondholders knew that the property had already been pledged to secure an indebtedness of the mortgagor, and accepted the property as a pledge for the debt subject to the prior indebtedness." A study of the first mortgage shows a clear intent on the part of Spruce to pledge the personal property here involved to Irving. That instrument was in apt terms not only a mortgage, but in addition thereto it stipulated that, "in consideration of the premises and of the purchase and acceptance of said bonds by the holders thereof and of the sum of one dollar to it in hand paid, and in order to secure the payment of said bonds * * * the company" (Spruce) "by these presents does hereby * * * sell, assign, * * * convey * * * transfer, and set over unto the said trustee" (Irving) "* * * in trust forever * * * any and all articles used * * * in the operation of said premises. * * * Every other article, chattel, or thing used * * * in said building, whether herein enumerated or not and constituting a part of the plant hereof and/or used in its operation as a hotel building * * * all of which * * * property * * * hereby * * * sold, assigned * * * transferred or set over * * * are hereinafter in this instrument sometimes referred to as the premises. To have and to hold said premises unto the said trustees * * * in trust nevertheless, for the equal and proportionate benefit and security of all present and future of said bonds." As against execution creditors, this pledge or transfer without delivery or possession would not avail, but, as between Spruce and Irving, it was valid, and it would not lie in Spruce's power to defeat it. Such being the case when Handel accepted a second mortgage which subjected itself to the first, such second mortgage had no greater power than had the mortgagor to deprive the first mortgage of its priority, which the court below awarded it in its final decree. Indeed of that decree it may be said, as was said in Fidelity, etc., Co. v. Western Penn., etc., R. R. Co. et al., 138 Pa. 494, 21 A. 21, 22, 21 Am. St. Rep. 911, "The decree of the court below left them in no worse position than that which they voluntarily assumed, and they have no right to ask us to place them in a better one."

Holding then as we do that the first mortgage had priority over the second mortgage, it follows the court committed no error in enjoining the second mortgagee from prosecuting the execution which the latter issued after the filing of the bill to foreclose and when the personal property here in question was in possession of and was being used by the court's receiver. In view of our so holding, it becomes needless for us to decide the question whether such decree was a final one from which Handel failed to appeal and without further discussing this and

other contentions made, all of which have been duly considered, and finding no error on the part of the court below, the appeal is dismissed at the cost of the appellants.